**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MICHAEL MCWILLIAMS,<br>*Plaintiff,* | : | CIV. NO.: 3:25-cv-01053(SRU) |
| | : | |
| ERIK COSTA, JARED WHITE, &<br>CITY OF MIDDLETOWN,<br>*Defendants.* | : | SEPTEMBER 29, 2025 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

The defendants, CITY OF MIDDLETOWN, ERIK COSTA, and JARED WHITE (collectively "these defendants"), respectfully submits this memorandum of law in support of their Motion to Dismiss plaintiff's complaint, filed on July 1, 2025 [Doc. 1] for failure to state a claim upon which relief can be granted as provided by Federal Rule of Civil Procedure 12(b)(6). Plaintiff Michael Paul McWilliams brings this action under 42 U.S.C. § 1983 and Connecticut law, alleging that defendants violated his constitutional rights by denying his application for a pistol permit and contacting his employer with information unearthed from the related background investigation. Plaintiff claims the application denial was based on discriminatory stereotypes regarding his sexual orientation, stemming from unsubstantiated past allegations of misconduct toward minors that were investigated by various law enforcement agencies, including the Federal Bureau of Investigation ("FBI"), violating federal and state law. He further asserts that the denial letter contained defamatory statements and that the employer contact led to his administrative suspension, giving rise to claims of equal protection violations, due process deprivations, First and Second Amendment infringements, and various state torts. As set forth more fully below, plaintiff's varied claims suffer from legal or factual infirmities that warrant dismissal.


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

## II. FACTUAL AND PROCEDURAL BACKGROUND

This action arises from plaintiff's application for a Connecticut pistol permit and the subsequent denial by the Middletown Police Department ("MPD"). Compl. ¶¶23-62. Plaintiff, a secondary school teacher and single gay adoptive parent with no criminal record, alleges he was subjected to discriminatory and defamatory treatment based on unsubstantiated past allegations of misconduct toward minors, which multiple investigations in other jurisdictions (Wisconsin, New York, and federal authorities) had deemed baseless. Id. ¶¶ 3, 7-22.

Specifically, Plaintiff claims that during the MPD's background check for his June 2024 permit application, Defendants learned of these allegations but ignored their exonerating outcomes, leading to a September 6, 2024 denial letter signed by Defendant Chief Erik Costa that falsely portrayed Plaintiff as having been investigated for "sexual assault and exploitation of juveniles" and accused by multiple foster children of abuse. Id. ¶¶ 26-45. Plaintiff further alleges that unknown and unnamed MPD personnel contacted his employer—a school district—shortly after the denial, sharing the letter's content and causing a brief administrative suspension. Id. ¶¶ 50-59. Plaintiff timely appealed the application denial to the Connecticut Board of Firearms Permit Examiners (which remains pending) and filed a discrimination complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). Id. ¶¶ 60-61.

Plaintiff filed this Complaint on July 1, 2025, invoking federal question jurisdiction under 28 U.S.C. § 1331 for claims arising under 42 U.S.C. § 1983 and the U.S. Constitution, with supplemental


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

jurisdiction over state-law claims under 28 U.S.C. § 1367. Id. ¶ 2. The Complaint asserts the following causes of action against defendants, individually or collectively:

I. Count I (§ 1983: Fourteenth Amendment Equal Protection - Discriminatory Treatment): Defendants intentionally discriminated against Plaintiff based on sex and sexual orientation by denying the permit without rational basis, treating him less favorably than heterosexual applicants with criminal records.

II. Count II (§ 1983: Fourteenth Amendment Procedural Due Process - Stigma-Plus Deprivation): Defendants inflicted stigmatizing falsehoods (via the denial letter and employer contact) without notice or a hearing, depriving Plaintiff of reputation and employment interests.

III. Count III (§ 1983: Fourteenth Amendment Substantive Due Process): Defendants' arbitrary actions shocked the conscience, infringing on family integrity and professional rights.

IV. Count IV (§ 1983: First Amendment Retaliation - Free Speech/Association): Defendants retaliated against Plaintiff's protected activities (e.g., FOIA request, CHRO complaint) and associations (as a gay adoptive parent) by denying the permit and contacting his employer.

V. Count V (§ 1983: Second Amendment - Right to Keep and Bear Arms): Defendants unconstitutionally denied the permit without historical justification, barring Plaintiff's right to bear arms.

VI. Count VII (Defamation - Libel and Slander Per Se): Defendants published false, stigmatizing statements in the denial letter and to the employer, imputing criminal conduct.


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

VII. Count VIII (Negligence and Negligent Infliction of Emotional Distress): Defendants breached duties in the investigation, letter drafting, and disclosure, causing foreseeable harm.

VIII. Count IX (Prima Facie Tort - Intentional Infliction of Harm Without Excuse): Defendants intentionally inflicted harm via otherwise lawful acts, without justification.

IX. Count X (Conn. Gen. Stat. § 46a-64 - Discrimination in Public Accommodations): Defendants denied equal access to the permit process as a public accommodation based on sex/sexual orientation.

X. Count XI (Invasion of Privacy - Public Disclosure of Private Facts and False Light): Defendants disclosed private, false information to the employer, casting Plaintiff in an offensive false light.

XI. Count XII[1] (Conn. Gen. Stat. § 52-571k - Discriminatory Denial of Equal Protection (Permit Letter)): Chief Costa's biased denial letter violated state equal protection.

XII. Count XII (Conn. Gen. Stat. § 52-571k - Discriminatory Deprivation of Equal Protection (Disclosure to Employer)): Officer White's disclosure to the employer violated state equal protection.

## III. <u>ARGUMENT</u>

### A. LEGAL STANDARD

[1] This count was misnumbered in the Complaint.



**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

Under Federal Rule of Civil Procedure 12(b)(6), a pleading may be dismissed for "failure to state a claim upon which relief can be granted." In order to survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. (quoting Twombly, 550 U.S. at 555). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). In other words, "bald assertions and conclusions of law will not suffice." Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996).[2]

A court considering a motion to dismiss under Rule 12(b (6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993); Patrowicz v. Transamerica HomeFirst, Inc., 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

[2] See Ruotolo v. Fannie Mae, 933 F. Supp. 2d 512, 524-25 (S.D.N.Y.) ("[e]ven from *pro se* plaintiff's, [b]ald assertions and conclusions of law are not adequate to withstand a motion to dismiss").


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

## B. ARGUMENT

### 1. THE INDIVIDUAL DEFENDANTS ARE NOT ALLEGED TO HAVE BEEN PERSONALLY INVOLVED IN CERTAIN CLAIMED CONSTITUTIONAL DEPRIVATIONS

It is well settled that "personal involvement of a defendant in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977). "[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he [or she] held a high position of authority." Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996); see also Grullon v. City of New Haven, 720 F.3d 133, 138-39 (2d Cir. 2013); Banks v. Annucci, 48 F. Supp. 3d 394, 416 (N.D.N.Y. Sept. 30, 2014) ("Where a defendant is a supervisory official, a mere 'linkage' to the unlawful conduct through the 'chain of command' (i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that unlawful conduct." (citations omitted)); Falls v. Pitt, No. 16-CV-8863, 2018 WL 3768036, at *6 (S.D.N.Y. Aug. 8, 2018) (holding that personal involvement was not established where the plaintiff failed to allege that the defendants were "present" for, "participated directly" in, or "somehow permitted" the alleged violation).

Here, plaintiff has alleged that "***someone*** at MPD told Plaintiff's school officials that Plaintiff had been the subject of multiple investigations for sexual assault of minors and was considered 'unsuitable.'" Compl. ¶ 52 (emphasis added). The pleading clearly does not identify either Officer White or Chief Costa, nor does it provide any factual circumstances from which it can be reasonably inferred that either individual was the alleged declarant. Rather, the plain allegations of the complaint


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

express a lack of knowledge. Id. Consequently, any cause of action asserted by plaintiff against Officer White and/or Chief Costa that rely on the purported disclosure of information to plaintiff's employer must be dismissed for lack of personal involvement.

### 2. THERE IS NO PLAUSIBLE *MONELL* CLAIM PRESENTED

To prevail on a claim against a municipality pursuant to Section 1983, a plaintiff must satisfy the well-settled requirements of Monell v. New York City Dept. of Social Servs., 436 U.S. 658 (1978). In Monell, the Supreme Court rejected respondeat superior as a basis for imposing municipal liability under § 1983. See Reynolds v. Giuliani, 506 F.3d 183, 191 (2d Cir. 2007) ("Respondeat superior or vicarious liability will not attach under § 1983."). Because there is no respondeat superior liability under § 1983, a municipality may not be held liable "simply for the isolated unconstitutional acts of its employees." Sorlucco v. New York City Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992). Instead, a plaintiff must show that there was a municipal "policy or custom" that caused the alleged constitutional violations. See Monell, 436 U.S. at 694.

"Courts have recognized four ways for plaintiffs to demonstrate a policy or custom: (1) a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers; (2) conduct ordered by a municipal official with policymaking authority; (3) actions taken pursuant to governmental custom even though such a custom has not received formal approval through the body's official decision making channels; or (4) a failure to train municipal employees that amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." Ramos


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

v. Town of E. Hartford, No. 3:16-CV-166 (VLB), 2019 WL 2785594, at *13–15 (D. Conn. July 2, 2019) (citation and quotation marks omitted).

Here, plaintiff has alleged that the City had a "policy/decision … to discriminate against Plaintiff on the basis of sex and sexual orientation" by Chief Costa – a policymaker in this arena – denying his pistol permit application. Compl., Count I, ¶¶ 2-7. No other recognized basis for establishing § 1983 municipal liability is presented.

Where a plaintiff seeks to hold a municipality liable for a "single decision by [a] municipal policymaker[ ]," Pembaur v. Cincinnati, 475 U.S. 469, 480 (1986), the plaintiff must show that the official had final policymaking power. See St. Louis v. Praprotnik, 485 U.S. 112, 121–22 (1988) (plurality opinion) (explaining that "only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability"). Moreover, the challenged actions must be within that official's area of policymaking authority. Id. (explaining that, pursuant to Pembaur "the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business"); see also Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000) (explaining that the government official must be a final policymaker with respect to the particular conduct challenged in the lawsuit).

Chief Costa is not the final policymaker in determining those suitable and those not for a pistol permit; that authority lies with the Board of Firearms Examiners. While the Chief has the discretion in determining "suitability," his discretion is limited by the plain language of the statute, which provides


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

for, inter alia, rule out criteria. See Conn. Gen. Stat. § 29-28. And the discretion provided to him by statute does not alter this conclusion. See Looby v. City of Hartford, 152 F. Supp. 2d 181 (2001).

In Looby, the District Court determined that the Hartford Fire Department's fire chief did not have final policymaking authority regarding hiring and promotion decisions. Id. at 189. Distinguishing the authority to exercise discretion from policymaking authority, the court there found that the City charter granted the fire chief authority to exercise discretion in making hiring and promotion decisions but did not delegate to the Chief the authority to make employment policy. Id. at 188–89 ("[N]owhere in the Charter is the Fire Chief given any power to create policy with respect to employment decisions.... [A] grant of discretion is not equivalent to policymaking authority, and plaintiff has failed to show anything more than Dobson's authority to exercise discretion in making hiring and promotion decisions."); see also Chin v. New York City Hous. Auth., 575 F. Supp. 2d 554, 562 (S.D.N.Y. 2008) ("The critical characteristic of final policymakers when employment is at issue is whether the municipal official has authority to formulate the rules governing personnel decisions rather than authority to make decisions pursuant to those rules—e.g., the hiring and firing of subordinates." (citing Pembaur, 475 U.S. at 483 n.12)).

As with Looby, the policymaking authority concerning the issuance of gun permits lies with the Board, whose determination is likewise appealable. The Chief is an assignee of initial review authority, but he is by no means the ***final*** policymaker as to who and who is not allowed to carry a pistol in this state. Conn. Gen. Stat. § 29-32b. Given this, plaintiff's § 1983 municipal liability claim is implausible.


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

### 3. PLAINTIFF'S FOURTEENTH AMENDMENT EQUAL PROTECTION CLAIM SHOULD BE DISMISSED FOR FAILURE TO PLAUSIBLY ALLEGE INTENTIONAL DISCRIMINATION OR SIMILARLY SITUATED COMPARATORS

To state a viable equal protection claim under § 1983, a plaintiff must plausibly allege that (1) they were treated differently from similarly situated individuals, and (2) the differential treatment was motivated by intentional discrimination based on membership in a protected class (e.g., sex or sexual orientation) or, under a "class-of-one" theory, without rational basis. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (Supreme Court recognizing class-of-one claims where plaintiff alleges irrational and wholly arbitrary treatment); Pyke v. Cuomo, 258 F.3d 107, 109 (2d Cir. 2001) (requiring intentional discrimination for protected-class claims). In licensing contexts, claims require specific allegations of disparate treatment among comparators who are "similarly situated in all material respects," not conclusory assertions. Hu v. City of New York, 927 F.3d 81, 93 (2d Cir. 2019) (dismissing equal protection claim in construction licensing for lack of comparators). Indeed, mere disparate impact is insufficient; purposeful discrimination must be shown. Washington v. Davis, 426 U.S. 229, 239-42 (1976). In firearm permitting, equal protection challenges to "suitability" determinations fail absent extensive allegations giving rise to plausible ***intentional*** bias.

The thrust of the complaint is Chief Costa denied plaintiff's pistol permit application based on bias against his sexual orientation as a gay single adoptive father, supposedly treating him less favorably than heterosexual applicants with actual criminal records; Compl. ¶¶ 2-5; beyond this bald announcement, plaintiff fails to identify specific comparators—e.g., he provides no details about


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

heterosexual applicants with similar unsubstantiated allegations of child sex crimes who received permits. Instead, he relies on general assertions of disparity, id. ¶3, and gross generalizations – "MPD has issued permits to other Middletown residents who had been *arrested or even convicted* of crimes, yet Plaintiff – who was merely accused and never charged – was deemed "unsuitable". Such a disparity is inexplicable except as discrimination (id. ¶ 47) – that lack the necessary factual enhancement to nudge the claims over the line of possible to plausible; rather, they remain threadbare recitals and/or conclusory assertions that need not be credited even at this early stage of proceedings. See Hu v. City of New York, 927 F.3d 81, 93 (2d Cir. 2019). The absence of such factual matter provides a basis for dismissal. See Kuck v. Danaher, 600 F.3d 159, 166 (2d Cir. 2010) (dismissing constitutional claim in CT pistol permit context for lack of comparators and recognizing the importance of discretionary suitability determinations); Stratford Police Dept. v. Bd. of Firearms Permit Exam'rs, 343 Conn. 62 (2022) (affirming broad discretion to deny permits for unsuitability based on facts and circumstances, including out-of-state conduct, providing rational public safety interest).

On top of this, plaintiff's complaint suffers from an absence of factual matter from which intentional discrimination can be reasonably inferred. As provided for in the complaint, the Chief's application denial was based on extensive investigations by multiple state and federal law enforcement and administrative agencies into repeated allegations of plaintiff engaging in child exploitation, Compl. ¶¶ 35-37, providing a rational, safety-related basis unrelated to sexual orientation. Connecticut statutory framework governing the application and issuance of pistol permits allows for a chief of police to deny an application for "suitability" – a standard laced with discretionary judgment-making authority. Conn.



**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

Gen. State. § 29-28(b). Plaintiff does not deny the existence of those investigations, see Compl. ¶¶ 7-19, yet, in the face of such repeated investigations, still unfoundedly attributes to Officer White and the Chief a manufactured unlawful animus. These wildly speculative allegations inherently contradict the smattering of "factual" ones within the complaint, and, therefore, it cannot be said that plaintiff has set forth a plausible equal protection claim.

### 4. PLAINTIFF'S FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS CLAIM SHOULD BE DISMISSED BECAUSE NO PROTECTED INTEREST EXISTS IN A DISCRETIONARY PISTOL PERMIT AND CONNECTICUT PROVIDES ADEQUATE POST-DEPRIVATION REMEDIES OF WHICH PLAINTIFF AVAILED HIMSELF

To establish a "stigma plus" procedural due process violation, "a plaintiff must show (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights."[3] Sadallah v. Utica, 383 F.3d 34, 38 (2d Cir. 2004). "Both the 'stigma' and the 'plus' must come from state action." Cutie v. Sheehan, 645 F. App'x 93, 96 (2d Cir. 2016). In the Second Circuit, the "plus" must be a concrete alteration, such as loss of government employment, and "utterances" include dissemination to the public or a third party likely to cause harm. Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 630-31 (2d Cir. 1996).

[3] This requires a tangible deprivation of a liberty or property interest (e.g., employment or legal status change), triggering due process protections like notice and a hearing. See Paul v. Davis, 424 U.S. 693, 701-12 (1976) ("Reputation alone, apart from some more tangible interests such as employment, does not implicate any "liberty" or "property" interests sufficient to invoke the procedural protection of the Due Process Clause.").


Karsten & Tallberg, LLC • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

No property interest exists in discretionary benefit, like the at-issue pistol permit, as there is no entitlement. See Kuck v. Danaher, 822 F. Supp. 2d 109, 126 (D. Conn. 2011) (no entitlement to CT pistol permit renewal). It so follows that adequate post-deprivation process (e.g., administrative appeal) satisfies due process for non-entitlements); see also Parratt v. Taylor, 451 U.S. 527, 541 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986).[4]

Here, plaintiff points to stigmatizing statements in defendant's denial letter (e.g., investigations for child exploitation) disseminated to the Firearms Board and plaintiff's employer assumedly by some unknown MPD employee, leading to his suspension. Compl. Count II, ¶¶ 4-11. Critically, no protected interest has been infringed upon, as there is no entitlement to the permit under Connecticut law. A pistol permit is discretionary under General Statutes § 29-28(b), so a denial thereof does not alter legal status in a manner that triggers the protections of due process. See Conn. Gen. Stat. § 29-28(b) ("suitability" determination is discretionary).

Further, the complaint fails to state a claim because plaintiff does not adequately plead the requisite "plus" factor—a tangible deprivation beyond reputational harm. Indeed, "[d]eleterious effects flowing directly from a sullied reputation, standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine." Mohammadi v. Tong, No. HHD-CV23-6168859S, 2024 WL 1739737, at *10 (Conn. Super. Ct. Apr. 18, 2024) (quoting Sadallah, 383 F.3d at 38). Additionally, since neither individual

[4] In Parratt, the court also held that a merely negligent deprivation of property under color of state law was actionable under 42 U.S.C. § 1983. This holding was mostly overruled by Daniels v. Williams in 1986, which held that a 1983 action only lies for an *intentional* deprivation of rights. The only aspect of Parratt that remains good law is that a claimant must prove any possible state remedies are constitutionally deficient in order to proceed with a 1983 action.


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

defendant has been identified as the alleged declarant, neither can be held liable for the supposed disclosure. any job-related decisions For discretionary decisions, there is no mandatory pre-deprivation hearing and post-deprivation remedies suffice under Parratt v. Taylor, 451 U.S. 527 (1981), and its progeny, including the statutory appeal to the Board of Firearms Permit Examiners, which provides a de novo review and opportunity to contest the denial. In fact, plaintiff admits he availed himself of this process, Compl. ¶ 60, which is adequate to satisfy due process.

Next, any contact by the defendant with plaintiff's employer is speculative ("someone at MPD," Compl. ¶51) and, even if true, the communication can be categorized as a good-faith mandated report under Conn. Gen. Stat. § 17a-101, not public dissemination. Post-deprivation remedies—like an appeal to the Board (Compl. ¶60)—suffice, as no pre-deprivation hearing is required for discretionary acts..

**5. PLAINTIFF'S FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS CLAIM SHOULD BE DISMISSED AS THE DENIAL AND EMPLOYER CONTACT DO NOT SHOCK THE CONSCIENCE, NO FUNDAMENTAL RIGHT WAS INFRINGED, AND QUALIFIED IMMUNITY SHIELDS DEFENDANTS**

Substantive due process protects against executive action that is arbitrary and "shocks the conscience," meaning egregious and outrageous conduct unjustifiable by any government interest. See ATC Partnership v. Town of Windham, 251 Conn. 597 (1999); see also County of Sacramento v. Lewis, 523 U.S. 833, 846-47 (1998) (high bar for non-legislative acts; intent to injure often required).

Generally speaking, "[f]or state action to be taken in violation of the requirements of substantive due process, the denial must have occurred under circumstances warranting the labels 'arbitrary' and 'outrageous.'" Natale v. Town of Ridgefield, 170 F.3d 258, 262 (2d Cir.1999). The complaint alleges


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

the denial and employer contact shocked the conscience by branding Plaintiff a predator without evidence, infringing upon his family and professional rights. Compl., Count III, ¶¶ 2-8. However, the actions—denying a permit based on past allegations and reporting information about a potential safety concern (which was already within the public domain based on plaintiff's institution of lawsuits) —are routine safety measures, not outrageous. Nothing in the complaint "shocks the conscience" or suggests a "gross abuse of governmental authority." Rochin v. California, 342 U.S. 165, 172 (1952), overruled on other grounds by Mapp v. Ohio, 367 U.S. 643 (1961); Natale, 170 F.3d at 263 (2d Cir. 1999). Whether authorized or not, that the Chief denied plaintiff's pistol permit application on grounds explicitly authorized by statute cannot be casted as outrageous or shocking.

Even more, substantive due process does not entitle federal courts to examine every alleged violation of state law, especially ones that, "while perhaps vexatious, are more routine than egregious." See Kuck v. Danaher, 600 F.3d 159, 167 (2d Cir. 2010) That is especially so because, under Connecticut law, plaintiff has defined recourse to challenge the merits of the denial. See Conn. Gen. Stat. §§ 29–32b(b), (f).

Further, no fundamental right has been directly infringed upon, as paid administrative leave was plaintiff's employer's decision. See Compl. ¶ 54. As such, the denial aligns with public safety interests, not arbitrary bias. See Stratford Police Dept. v. Bd. of Firearms Permit Exam'rs, 343 Conn. 62 (2022) (discretion to deny for unsuitability based on character/reputation not arbitrary when reasoned); Basilicato v. State, 60 Conn. App. 503 (upholding denial for mental health concerns as valid discretion).


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

Therefore, the complaint fails to state a claim because the alleged conduct—denying a permit based on past allegations and contacting an employer—does not "shock the conscience."[5]

**6. PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM SHOULD BE DISMISSED FOR LACK OF PLAUSIBLE CAUSATION BETWEEN PROTECTED ACTIVITY AND ADVERSE ACTION, WITH QUALIFIED IMMUNITY AND NO MUNICIPAL LIABILITY FURTHER BARRING RELIEF.**

In order to state a retaliation claim, the Second Circuit requires a private citizen to show: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right [causation]." _, 268 F.3d 65, 73 (2d Cir.2001). In the Second Circuit, causation demands the protected speech be a substantial motivating factor. Dorsett v. County of Nassau, 732 F.3d 157, 160 (2d Cir. 2013). Timing, alone, may infer motive, but not that inference is defeated if adverse action predates speech. Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001). Further, associational rights protect intimate relationships like family but require direct infringement. Adler v. Pataki, 185 F.3d 35, 44 (2d Cir. 1999).

The complaint alleges retaliation for plaintiff's FOIA request (Sept. 4, 2024), CHRO complaint (Sept. 20), and familial associations via defendant's permit denial (Sept. 6), as well as employer contact. Compl., Count IV, ¶¶ 3-9. While protected activity exists, causation fails: the permit denial occurred on

[5] See County of Sacramento v. Lewis, 523 U.S. 833 (1998); ATC Partnership v. Town of Windham, 251 Conn. 597 (1999).



**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

or about September 6, 2024, ***after*** the application but before the other claimed protected activities (e.g., CHRO complaint on September 20, 2024).

While timing can be viewed as close, it is not plausibly linked. No chilling effect on a person of ordinary firmness is alleged, as plaintiff continued pursuing remedies, including his appeals rights and asserting this lawsuit. Because "[i]t goes without saying that retaliation cannot be established where no adverse action has been alleged,"[6] plaintiff's First Amendment retaliation claim must ultimately be dismissed. See Dillon v. Morano, 497 F.3d 247, 251 (2d Cir. 2007); Gill v. Pidlypchak, 389 F.3d 379, 382–84 (2d Cir. 2004) (requiring an adverse action by defendants and a causal connection between the adverse action and the protected speech).

### 7. PLAINTIFF'S SECOND AMENDMENT CLAIM SHOULD BE DISMISSED BECAUSE CONNECTICUT'S SUITABILITY REQUIREMENT ALIGNS WITH HISTORICAL TRADITIONS AND THE DENIAL WAS REASONABLE

Post-N.Y. State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1, 17 (2022), courts assess if (1) conduct is covered by the Second Amendment's text (presumptively protected), and (2) regulation is consistent with historical tradition. Discretionary "may-issue" licensing with subjective criteria (e.g., "proper cause") is unconstitutional, but "shall-issue" with objective requirements (e.g., background checks) is permissible. Id. at 38 n.9. In the Second Circuit, "good moral character" requirements for permits are upheld if objective and tied to danger assessments, rather than vague discretion. Antonyuk v. Chiumento, 89 F.4th 271, 328 (2d Cir. 2023), cert. granted, judgment vacated sub nom. Antonyuk v.

[6] Kuck v. Danaher, 600 F.3d 159, 168 (2d Cir. 2010)

James, 144 S. Ct. 2709 (2024), and reinstated in part by Antonyuk v. James, 120 F.4th 941 (2d Cir. 2024) (historical analogues support denying arms to dangerous persons).

Here, the complaint fails to state a claim because Connecticut's suitability requirement for pistol permits is consistent with the Second Amendment, as it aligns with historical traditions of denying firearms to those deemed unsuitable based on background. The denial was not arbitrary but based on documented allegations, even if unsubstantiated. See Kuck v. Danaher, 600 F.3d 159, 166 (2d Cir. 2010) (pre-Bruen, upholding suitability as substantially related to safety; post-Bruen, aligns with tradition of restricting "dangerous" persons); Stratford Police Dept., 343 Conn. 62 (2022) (discretion to deny for unsuitability, including reputation, has reasonable basis in safety, consistent with historical analogues); Basilicato v. State, 60 Conn. App. 503 (2000) (denial for mental health risks valid); Ambrogio v. Bd. of Firearms Permit Exam'rs, 42 Conn. Supp. 157 (1992) (discretion bounded by reasonable basis, not unbridled).

### 8. GOVERNMENTAL IMMUNITY BARS PLAINTIFF'S NEGLIGENCE AND NEGLIGENT INFLICTION CLAIMS

Plaintiff's claims for negligence and negligent infliction of emotional distress ("NIED") against defendants fail because the conduct about which plaintiff complains was discretionary in nature; and plaintiff cannot demonstrate that any exception to discretionary act immunity applies. Thus, the negligence claims are implausible as a matter of law.


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

Municipalities are immune from liability for the discretionary governmental conduct of their agents. Grady v. Somers, 294 Conn. 324, 348 (2009); Conn. Gen. Stat. § 52-557n(a)(2)(B).[7] Discretionary act immunity "reflects a value judgment that – despite injury to a member of the public – the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury." Violano v. Fernandez, 280 Conn. 310, 318 (2006).

In Connecticut, it is well-settled that the operation of a municipal police department and the acts and omissions related thereto are discretionary as a matter of law. Coley v. City of Hartford, 312 Conn. 150, 164 (2014). Moreover, "[i]n order to create a ministerial duty, there must be a city charter provision, ordinance, regulation, rule, policy, or any other directive [compelling a municipal employee] to [act] in any prescribed manner." Coley v. Hartford, 140 Conn. App. 315, 323 (2013), aff'd, 312 Conn. 150 (2014). Here, plaintiff complains that the Chief violated statutory law by denying his pistol permit on suitability grounds; yet, those grounds are specifically authorized by law. And under the "suitability" standard, there can be little argument the Chief must exercise his discretion and judgment in making that crucial determination – authorizing an individual to possess and carry a firearm is, especially in these

---

[7] Connecticut General Statutes § 52-557n(a)(2)(B) provides, in pertinent part: "[A] political subdivision of the state shall not be liable for damages to person or property caused by ... negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

times, of significant import. Thus, the Chief was engaged in discretionary governmental functions, for which he is entitled to governmental immunity.

To hold a municipality or official liable for the alleged misperformance of a discretionary governmental function, a plaintiff must demonstrate that there is at least a disputed issue of material fact as to whether one of the three recognized exceptions to the discretionary act immunity codified in General Statutes § 52-557n(a)(2)(B) applies. Here, there can be no true dispute that the first exception – "where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws" – is not in play. Evon v. Andrews, 211 Conn. 501, 505 (1989).

The second exception – "where the alleged acts involve malice, wantonness or intent to injure, rather than negligence" – is equally inapplicable. Id. This is because "claims caused by wanton, reckless or malicious conduct[] by their very nature ... do not sound in negligence." Schofield v. Magrey, Civil No. 3:12-cv-544, 2015 WL 521418, at *13 (D. Conn. Feb. 9, 2015) (citing Hamilton v. Lajoie, 660 F. Supp. 2d 261, 265-66 (D. Conn. 2009)). Additionally, given the express statutory grounds on which the Chief based his decision, it cannot be properly characterized as wanton, reckless or malicious.

Thus, the lone exception conceivably applicable to plaintiff's claim – and the only one to which he cites – arises "where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm." Evon, 211 Conn. at 505. This exception "has received very limited recognition in this state." Grady, 294 Conn. at 350.


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

To invoke the "identifiable victim/imminent harm" exception, a plaintiff must establish: "(1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to an imminent harm." Edgerton v. Town of Clinton, 311 Conn. 217, 230-31 (2014). "All three elements [of the exception] must be proven in order for the exception to apply." Id. As demonstrated below, there is no genuine issue of material fact that plaintiff cannot satisfy any prong of the exception.

Plaintiff was not exposed to imminent harm. In determining whether a harm is imminent, courts must inquire "whether it was apparent to the municipal defendant that the dangerous condition was so likely to cause harm that the defendant had a clear and unequivocal duty to act immediately to prevent the harm." Haynes v. City of Middletown, 314 Conn. 303, 322-23 (2014). The "imminent harm" prong is very restrictive insofar as a harm cannot be imminent for the purposes of the exception if it "could have occurred at any future time or not at all." Id. at 322 (citing Evon, 211 Conn. at 508).

Moreover, for the exception to apply, the harm at issue must be physical in nature. Celotto v. Brady, No. CV065003279, 2008 WL 2313331, at *11 (Conn. Super. Ct. May 14, 2008) (granting summary judgment on plaintiff's negligent infliction of emotional distress claim because there was no evidence of physical harm of the type that Connecticut courts have recognized under the "identifiable person/imminent harm exception"); Waller v. City of Middletown, 50 F. Supp. 3d 171, 196 (D. Conn. 2014) (noting that exception required physical harm to apply), vacated in part on other grounds, 89 F. Supp. 3d 279 (D. Conn. 2015); Chipperini v. Crandall, 253 F. Supp. 2d 301, 312 (D. Conn. 2003) ("Although [the imminent harm] exception to governmental immunity is not well developed in


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

Connecticut law it appears that the type of harm required is physical harm or personal danger."); Milardo v. City of Middletown, No. 3:06-cv-01071, 2009 WL 801614, at *9 (D. Conn. Mar. 25, 2009) (citing Chipperini and concluding that imminent harm exception did not apply to officers who may have unlawfully entered residence); Borg v. Town of Westport, No. 3:15-cv-1380, 2016 WL 9001021, at *10 (D. Conn. Aug. 18, 2016); Bento v. City of Milford, No. 3:13-cv-1385, 2014 WL 1690390, at *6 (D. Conn. Apr. 29, 2014) ("[C]ourts in this state have also held that the imminent harm complained of must be physical in nature in order for the exception to apply."); Pane v. City of Danbury, No. CV97347235S, 2002 WL 31466332, at *9 (Conn. Super. Ct. Oct. 18, 2002), aff'd, 267 Conn. 669 (2004) (finding that "[c]ases where plaintiffs allege 'imminent harm' typically involve physical harm rather than emotional distress[,]" therefore finding governmental immunity for the plaintiff's negligent infliction of emotional distress claim).

Here, the complaint is bereft of plausible allegations that the harm stemming from the denial of his permit or the disclosure of his past law enforcement contacts (that he likewise published via public lawsuit well prior to any claimed disclosure by "someone at the MPD") is not claimed to be physical in nature, and he has not alleged that he has suffered or suffers any attendant or reasonably foreseeable bodily illness or concrete manifestations of physical symptoms as a result of the arrest, which is required by law.

Additionally, the only dangerous condition that can be divined is an incorrect "suitability" determination; however, the statutory-based, discretionary decision of Chief Costa would not have made


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

any defendant aware that this determination "was so likely to cause harm that [he] had a clear and unequivocal duty to act immediately to prevent the harm." Haynes, 314 Conn. at 322-23.[8]

Therefore, the complained-of harm is neither sufficiently "imminent" for purposes of the exception, nor is it the particular type of harm recognized by Connecticut courts. As a result, plaintiff's negligence and negligent infliction of emotional distress claims are barred by the common law doctrine of governmental immunity.

### 9. THERE ARE NO ALLEGATIONS OF SEVERE EMOTIONAL DISTRESS OR EXTREME AND OUTRAGEOUS CONDUCT TO SUPPORT PLAINTIFF'S "INTENTIONAL INFLICTION OF HARM WITHOUT EXCUSE"

An intentional infliction of emotional distress claim requires a plaintiff to prove "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Appleton v. Board of Educ., 254 Conn. 205, 210 (2000) (internal quotation marks omitted).

Plaintiff has alleged that the supposed Chief Costa's denial letter and its "publication" also renders "[a]ll [d]efendants" liable. Compl. Count Heading, ¶ 4. As stated, a municipality cannot be held liable for intentional torts of its employees or agents; Conn. Gen. Stat. § 52-557n(a)(2)(B); the City must

[8] Further, because "it is impossible to be an identifiable person in the absence of any corresponding imminent harm," Doe v. Peterson, 279 Conn. 607, 620-21 (2006), plaintiff also cannot qualify as an identifiable victim.


Karsten & Tallberg, LLC • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

be dismissed. As for the individual defendants, plaintiff does not even attribute the disclosure of this information to either of them; instead, he blames "someone at the MPD …" Compl. ¶ 52. The individual defendants cannot be held liable for the torts of another, rendering the cause of action them also legally insufficient as a matter of law.

The Chief's letter cannot be deemed "outrageous." Initially, notice of denial is mandated by law. Conn. Gen. Stat. § 29-28a(b). Legally required notice cannot be deemed extreme and outrageous. See, e.g., Brooks v. Sweeney, 299 Conn. 196, 207, 09 (2010) (affirming trial court's finding that warrant was supported by probable cause, and therefore defendant was entitled to judgment as a matter of law on the intentional infliction of emotional distress claim because "although 'being arrested and subject to prosecution may have been traumatic to the plaintiff, enforcement of the law can hardly be called conduct beyond the acceptable bounds of decent society.'") (quoting Brooks v. Sweeney, No. CV065005224S, 2008 WL 5481203, at *4 (Conn. Super. Ct. Nov. 28, 2008)); Washington v. Blackmore, 119 Conn. App. 218, 223 (2010) (affirming trial court's finding that probable cause for a warrantless arrest existed, and therefore precluded recovery on intentional infliction of emotional distress claim); see also Lamar v. Brevetti, 173 Conn. App. 284, 290 (2017) ("The existence of probable cause, under the facts and circumstances of this case, is irrefragable and therefore the court properly rendered summary judgment as to the negligent and intentional infliction of emotional distress counts.")). Legal conduct cannot be outrageous.

Additionally, insofar as plaintiff claims the content of the denial letter was "false," that allegation alone does not give rise to actionable "extreme and outrageous" conduct. See Mauzy v. Robinson, No.


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

X10UWYCV0140102269S, 2006 WL 3691002, at *3-5 (Conn. Super. Ct. Nov. 20, 2006) (granting summary judgment on an IIED claim where only the characterization of allegedly "false" events was disputed, not that they actually occurred); Acevedo v. Sklarz, 553 F. Supp. 2d 164, (D. Conn. 2008) (summary judgment on IIED claim granted to school official where witness statement to police "did not contain any materially false information and essentially reflected [the defendant's] characterization of undisputed events."). Even where an officer's law enforcement activity seems overzealous and fails to result in criminal prosecution does not support a viable IIED claim. See Horenian v. Washington, 128 Conn. App. 91 (2011).

In Horenian, the plaintiff was involved in a car accident, and the defendant officer was dispatched to the scene. Id. at 93. The plaintiff was transported to the hospital, and the officer interviewed the plaintiff while he laid in the hospital bed. Ibid. On completion of the interview, the officer informed the plaintiff that he was at fault for the accident by making an improper U-turn. Id. at 93-94. Plaintiff disagreed with the officer's conclusion and argued that tire marks at the scene would prove the officer wrong. Id. at 94. The officer returned to the scene for further investigation and then returned to the hospital "'[i]n great rage and anger,' threw a traffic citation onto the plaintiff's chest, told the plaintiff he should arrest him for lying about the tire marks and departed." Ibid.

On discharge, the plaintiff returned to the scene of the accident; located the tire marks he told the officer about; requested the officer and a supervisor respond to the scene; and showed the officers the marks. Ibid. The supervisor destroyed the citation in front of the defendant officer, who nonetheless submitted a separate copy of the ticket to the traffic division for processing. Ibid. Plaintiff requested a


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

copy of the police report, which the officer told plaintiff was ready for pickup, but, on plaintiff's arrival to the department, no copy was available. Id. at 95. The state subsequently nolled the charge of making an improper U-turn. Ibid. In granting judgment to the officer on the plaintiff's IIED claim, the Appellate Court found that the officer's conduct was "merely insulting or displays of bad manners," which did not constitute "extreme and outrageous" conduct. Id. at 100-01.

If interrogating an accident victim at the hospital, wrongly citing him for a traffic violation, processing that citation in violation of a supervisor's order and lying about the availability of a report to the plaintiff is not "extreme and outrageous," then the Chief's legally authorized decision cannot meet the decidedly exacting "extreme and outrageous" standard, and, therefore, the IIED is properly subject to dismissal.

**10. THERE IS NO CAUSE OF ACTION UNDER GENERAL STATUTES § 46a-64**

Plaintiff purports to assert a claim for public accommodations discrimination in violation of General Statutes § 46a-64; however, numerous Connecticut courts have concluded that the statute simply does not provide for a private cause of action. See, e.g., Traylor v. Awwa, 899 F. Supp. 2d 216, 220-21 (D. Conn. 2012); see Smith v. New Horizon Compute r, No. CV084026134S, 2009 WL 862749, at *2 n.4 (Conn. Super. Ct. Mar. 10, 2009) (Section 46a-64a "was meant only to be enforced through fines or imprisonment, … Connecticut's public accommodation statute does not provide for either an express, or implied, private cause of action under § 46a-64(a)(1) and (2)"); Batiste v. Soundview Med. Assoc., LLC, No. CV065001278, 2008 WL 1105247, at *5 (Conn. Super. Ct. Mar. 25, 2008) (Section


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

46a-64 "has been found to be penal in nature on several occasions and not to afford a private right of action"); McPhail v. City of Milford, No. 054506S, 1999 WL 126796, at *3 (Conn. Super. Ct. Feb. 25, 1999) (Sections 46a-64(a)(1) and 46a-64(a)(2) "have been found to be penal in nature and not to afford a private cause of action"); Wright v. City of Hartford, No. CV970570863S, 1998 WL 83670, at *3 (Conn. Super. Ct. Feb. 13, 1998) ("There is no statutory authorization to bring private actions based on a violation of" § 46a-46(a)(1) or (2)). Because the great weight of Connecticut authority holds that § 46a-64 does not provide for a private cause of action, complainant's claim must be dismissed.

What is more, even if § 46a-64 provided for a private cause of action, which it does not, complainant has failed to identify "any establishment which caters or offers its services or facilities or goods to the general public" to which he was denied full and equal accommodation. Conn. Gen. Stat. § 46a-63(1). Complainant has likewise failed to identify any service, facility or good to which he was denied access. Instead, the crux of the complaint is the alleged baselessness for denial of plaintiff's gun permit application. Plaintiff received the same exact process as everyone else who applies, including his right to appeal the Chief's discretionary decision about plaintiff's "suitability," but what he wanted was not granted. Access to a gun is not a public accommodation, nor is the important public safety process of reviewing such permits. The matters of which plaintiff complains simply do not fit within the ken of the statute. On this additional basis, plaintiff's public accommodation claims under § 46a-64 should be dismissed.


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

**11. PLAINTIFF'S INVASION OF PRIVACY CLAIMS ARE IMPLAUSIBLE ON MULSTIPLE GROUNDS**

To establish invasion of privacy by false light, plaintiff must show "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Homes v. Town of East Lyme, 866 F. Supp. 2d 108, 131 (D. Conn. 2012) (quoting Jonap v. Silver, 1 Conn. App. 550, 557–558, 474 A.2d 800 (1984)). The "publicity" required for invasion of privacy demands "that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Id. (quoting Orsini v. Zimmer, No. CV075013711S, 2009 WL 5698148, at *7 (Conn. Super. 2009)).

Here, plaintiff alleges "someone at MPD told Plaintiff's school officials that Plaintiff had been the subject of multiple investigations for sexual assault of minors and was considered 'unsuitable.'" Compl. ¶ 52. First, plaintiff identifies neither of the name individual defendants as the declarant, and it is well-settled that a municipality cannot be held liable for the "[a]cts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct …" Conn. Gen. Stat. § 52-557n(a)(2)(A). In this simple regard, plaintiff's privacy claim should be dismissed.

What is more, "[i]n the context of a cause of action for invasion of privacy, the term publicity means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Holmes, 866 F. Supp. 2d at 132 (quoting Sidiropoulos v. Bridgeport Hosp., No. CV030401830S, 2004 WL


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

202256, at *2 (Conn. Super. Jan. 9, 2004)). As such, "it is not an invasion of privacy to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons. Publicity is a communication that reaches, or is sure to reach, the public at large." Id.

Based on plaintiff's allegations, the number of "school officials" is plainly limited and those involved in the investigation and/or decisionmaking process – despite not being mentioned, referenced or named – would likewise constitute a handful of individuals. Furthermore, plaintiff does not allege that any private matter was further publicized beyond this minor universe of folk. In the context of public schools, and safety of the students, any referral of information by the unknown PD employee does not amount to actionable "publicity."

The Connecticut Supreme Court has approvingly cited the Restatement of Torts' (Second) definition of what amounts to unreasonable publicity of private life facts. See Perkins v. Freedom of Information Commission, 228 Conn. 158, 171–72 (1993). Pursuant to that authority, a plaintiff must plead: "(1) that the defendant gave publicity; (2) to a matter concerning the private life of the plaintiff; and, (3) that the matter publicized was of a kind that (a) would be highly offensive to a reasonable person, and (b) would not be of legitimate concern to the public." Corniello v. Fuzion Medical Aesthetic Boutique, LLC, No. CV146051182S, 2015 WL 5712823, at *4 (Conn. Super. Ct. Aug. 26, 2015) (citation omitted). This tort action only arises through "public disclosure of information that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." Perkins, 228 Conn. at 172 (quoting Restatement (Second) of Torts § 652D (1977)).


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

With respect to the type of personal information protected under law, comment (b) of § 652D of Restatement provides guidance:

> Every individual has some phases of his life and his activities and some facts about himself that he does not expose to the public eye, but keeps entirely to him self [sic] or at most reveals only to his family or to close personal friends. Sexual relations, for example, are normally entirely private matters, as are family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most details of a man's life in his home, and some of his past history that he would rather forget.

Perkins, 228 Conn. at 172-73 (citation omitted). Decisional law has also identified other matters not deemed to be private. See, e.g., Galligan v. Edward D. Jones & Co., Inc., No. 389623, 2000 WL 1785041, at *7-8 (Conn. Super. Ct. Nov. 13, 2000) (allegation in required notice to securities regulators that plaintiff made a material misrepresentation to the compliance department was not a "private matter"); Roman v. United Illuminating Co., No. CV146044689S, 2015 WL 3555343, at *7 (Conn. Super. Ct. May 12, 2015) (statements regarding the plaintiff's criminal conduct to other employees during the course of an internal investigation was not a private matter).

In this case, plaintiff has alleged that his "MPD personnel affirmatively contacted Plaintiff's employer, a local school district, and shared the content of Costa's defamatory letter and related 'background' information." Compl. ¶ 51. Yet, plaintiff specifically admits that he "proceeded to file formal complaints and even legal actions against those he believed had defamed him in this ordeal (including ***lawsuits*** against Cortland County officials and the individuals who spread falsehoods)." Id. ¶ 21. Those lawsuits were matters filed in federal court and publicly accessible, through which allegations


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

concerning investigations into plaintiff's potential criminal activity that underlied the federal civil rights claims asserted were made public by plaintiff.[9] Therefore, plaintiff was originally made public police investigations of him. See id.; see also LaFontaine v. Family Drug Stores, Inc., 33 Conn. Supp. 66, 72 (1976) (granting directed verdict to defendant on invasion of privacy claim because "once the actual arrest occurred, the facts related to it were no longer private and they became part of the public record. A person charged with the violation of the law loses her right of privacy regarding that matter.").

Beyond this, it is difficult to divine information of more legitimate concern to the public than making aware a public-school official that a presently active teacher had been extensively investigated for potential crimes against children by Marshfield, WI police; Courtland County, NY police; Courtland Child Protective Services, West Virginia authorities; and the **FBI**. Compl. ¶¶ 8-20. As such, the prevailing public policy of safeguarding children within a public school's care demonstrates that the information at issue was of legitimate public concern, and the claim fails on this additional ground.

### 12. A CAUSE OF ACT FOR AN ALLEGED VIOLATION OF GENERAL STATUTES § 52-571K CAN ONLY BE PRESENTED IN CONNECTICUT SUPERIOR COURT

Plaintiff contends that the denial of gun permit application deprived him "of the equal protection of the laws and of equal privileges and immunities guaranteed by Article First of the Connecticut Constitution, in violation of Conn. Gen. Stat. § 52-571k(b)." Plaintiff further alleges that "Costa's

[9] Williams v. Sandy, 1:23-cv-04651-LTS (NDNY) (https://ecf.nynd.uscourts.gov/cgi-bin/HistDocQry.pl?141499559469988-L_1_0-1) (last visited Sept. 29, 2025); Williams v. Sandy, 1:23-cv-04651-LTS (SDNY) (https://ecf.nysd.uscourts.gov/cgi-bin/HistDocQry.pl?112289350716175-L_1_0-1) (last visited Sept. 29, 2025).


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

conduct was deliberate, wilful, and undertaken with reckless indifference to Plaintiff's rights; therefore, governmental immunity is unavailable and Plaintiff is entitled to recover costs and reasonable attorney's fees under § 52-571k(f)." Such conclusory matter aside, Count XII must be dismissed because the claim is only properly raised in Superior Court.

Pursuant to General Statutes § 52-571k(c), violation of its provisions allows for "[a]ny person aggrieved by a violation … may bring a civil action for equitable relief or damages in the ***Superior Court***." By the plain language of the statute, a cause of action for violation of the statute is presentable only "in the Superior Court." At least one of other court in this District has likewise agreed. See Thompson v. Beausoleil, No. 2:23-CV-1677 (OAW), 2025 WL 437303, at *4 (D. Conn. Feb. 7, 2025) ("Wolfburg and Angelo next argue that Count Four must be dismissed because the claim asserted therein may only be brought in state court. See Conn. Gen. Stat. § 52-571k (providing for a civil action "in the Superior Court."). The court finds this argument persuasive, and given the Plaintiff does not respond to it, the court also concludes that the point has been conceded. These are reasons enough for dismissal."). Consequently, these defendants respectfully move to dismiss plaintiff's claim pursuant to General Statutes § 52-571k.

## IV. CONCLUSION

For the foregoing reasons, the defendants respectfully move for an order dismissing plaintiff's claims addressed herein.


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

DEFENDANTS, CITY OF MIDDLETOWN,
ERIK COSTA, and JARED WHITE

BY /ss/ Dennis M. Durao
Dennis M. Durao
Federal Bar No.: ct29271
Karsten & Tallberg, LLC
500 Enterprise Dr., Suite 4B
Rocky Hill, CT 06067
T: (860)233-5600
F: (860)233-5800
ddurao@kt-lawfirm.com

**CERTIFICATION**

I hereby certify that on September 29, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/ss/ Dennis M. Durao
Dennis M. Durao