**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MICHAEL MCWILLIAMS,<br>*Plaintiff,* | : | CIV. NO. 3:25-cv-01053(SRU) |
| vs. | : | |
| ERIK COSTA, ET AL.<br>*Defendants.* | : | NOVEMBER 17, 2025 |

**REPLY TO PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## I. Preliminary Statement

Defendants City of Middletown(the "City"), Chief Erik Costa and Officer Jared White respectfully submit this reply in response to plaintiff's Opposition to Motion to Dismiss, dated October 20, 2025 [Doc. 12] (the "Opposition").

## II. Law & Argument

### A. The Complaint Fails to Allege the Personal Involvement of Chief Costa and Officer White in Any Constitutional Violation

Plaintiff's attempt to impute personal involvement to Officer White hinges on the bare assertions that he "made and published statements in the course of that investigation" (Compl. ¶ 5) and "told plaintiff's employer (or provided the information that was told) that Plaintiff was under investigation for sexual misconduct," (id., Count VII ¶ 13), which are inherently inconsistent with his express contention that the purported disclosure was made by "someone at MPD" (Id. ¶ 40). Such contradictory pleading undermines any good-faith basis for attributing the publication to White, specifically, rendering the allegation implausible. See Silano v. Scarnuly-Grasso, No. 3:12-CV-1732 (JBA), 2017 WL 2802875, at *14 (D. Conn. June 28, 2017). Even assuming White "made and published statements in the course of that investigation," Connecticut law allows the disclosure of certain information in connection with a permit application. See Conn. Gen. Stat. § 29-28 et seq.


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

In the stigma-plus context, Chief Costa's denial letter and status as a "local authority" does not amount to personal involvement (Compl. ¶¶ 33–38; Opp'n at 8). Though the Complaint opaquely alleges that unknown MPD personnel disclosed information to Plaintiff's then-employer, Costa is not even suggested to have personally participated in, directed, or even knew of any such disclosure. Instead, Plaintiff argues that, as, the "local authority responsible for acting on pistol permit applications in Middletown" (Compl. ¶ 4), Costa must have known and permitted the disclosure without any factual enhancing matter, which eviscerates any basis from which reasonable inferences can be drawn.

**B. Chief Costa Is Not A "Final Policymaker" For State-Issued Gun Permits**

Far from addressing the core flaw in Plaintiff's theory—that Chief Costa is not the City's final policymaker with respect to pistol permit decisions—Plaintiff's response merely denies the point without elucidation and factually distinguishes Looby v. City of Hartford, 152 F. Supp. 2d 181 (D. Conn. 2001), without considering, much less, addressing its import; that is, how the statutory or regulatory framework – both in Looby and, in application, here – plainly vests ultimate authority in the challenged act to another entity, depriving any other a final policymaker. In Looby, though the fire chief possessed "the discretionary authority to fill vacant positions from a list of certified candidates," the court found the Director of Personnel retained ultimate control of promotions under the City Charter. Id. at 188.

The same logic applies here with even greater force; pistol permit denials by a local chief like Costa are subject to binding review and final issuance authority by the State—specifically, the Department of Emergency Services and Public Protection's ("DESPP") Special Licensing and Firearms Unit. See Conn. Gen. Stat. § 29-28(b) (local issuing authority may issue temporary permits but must forward the application to DESPP for a final determination on permitting). It is not enough that an official exercises discretion in a decision that is unreviewable at the local level. See Anthony v. City of



**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

New York, 339 F.3d 129, 139 (2d Cir. 2003); Agosto v. New York City Dep't of Educ., 982 F.3d 86, 92 (2d Cir. 2020) (rejecting plaintiff's rationale that defendant was a final policymaker on the sole basis that his decisions with respect to plaintiff were "essentially unreviewable…," and holding that "the Supreme Court has rejected the concept of *de facto* policymaking authority, which erroneously conflates a final decisionmaker (which [defendant] may have been) with a final policymaker (which [defendant] was not)").

Plaintiff's Monell claim also fails for want of causation. To hold a municipality liable, a plaintiff must show that the entity, "through its deliberate conduct," was the "moving force" behind the injury. Brown, 520 U.S. at 404. The Complaint alleges no such deliberate municipal conduct; the only "deliberate actor" identified is Costa himself, acting in his capacity as the State's designee on a *state* permit application (Compl. ¶¶ 33–38). There are no averments of City involvement—no municipal resolution, training deficiency, or oversight failure that encouraged or ratified the denial. This is precisely the sort of respondeat superior liability Monell forbids. Monell, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.") (emphasis in original); Opp'n at 9 ("[Monell] forbids municipal liability under § 1983 on a simple respondeat superior theory…." and "Plaintiff agrees that the City cannot be held vicariously liable for its employees' torts…").

**C. The Complaint Fails to State a Valid Fourteenth Amendment Equal Protection Claim**

Plaintiff's Opposition provides nothing to overcome the Complaint's want of allegations regarding the requisite comparators or any plausible inference of intentional discrimination based on sexual orientation. Plaintiff concedes the absence of specific comparators in the Complaint (Opp'n at 12) but erroneously contends that none is required for a "class-based" equal protection claim alleging


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

"outright animus" (Id. at 11–12 (citing Pyke v. Cuomo, 258 F.3d 107, 110 (2d Cir. 2001)). This misstates the law, which requires plausible factual assertions that a plaintiff "was similarly situated in all material respects to the individuals with whom she seeks to compare [him]self." Id. The Complaint only vaguely asserts that "MPD has issued permits to other [heterosexual] Middletown residents who had been arrested or even convicted of crimes" (Compl. ¶ 47), without identifying *any* such individuals, describing relevant circumstances (e.g., nature of arrests, relevance to "suitability" under General Statutes § 29-28(b)), or explaining how they materially resemble plaintiff—a gay man with no criminal record accused only of unsubstantiated, investigated-and-dismissed allegations (Id. ¶¶ 3, 29–31). This barebones reference is the antithesis of a "sufficient comparator."

Plaintiff's reliance on Pyke is equally unavailing, as that decision does not excuse the comparator requirement in protected class discrimination cases like this one. In Pyke, Native American plaintiffs on a reservation alleged a denial of police protection due to racial bias in a context where "it would be difficult, if not impossible, to find other individuals whose situation is similar to Native Americans living on a reservation and exercising a substantial measure of self-government independent of [the] [s]tate." 258 F.3d at 109. The Second Circuit thus carved out a narrow exception for claims where the protected class's unique circumstances render comparators practically unattainable, implicitly assuming that, if non-protected comparators in identical situations existed, they would have been treated more favorably. Id. No such uniqueness exists here: pistol permit applicants are a broad, identifiable group of "Middletown residents" subject to the same state-law criteria for "suitability" (General Statutes § 29-28(b)), making comparators not only possible but essential to test plaintiff's theory of selective denial based on sexual orientation.). See Hu v. City of New York, 17-CV-2348 (ARR) (JRC), 2022 WL 182360, at *9 (E.D.N.Y. Jan. 20, 2022), aff'd, 2023 WL 3563039 (2d Cir. May 19, 2023).


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

Plaintiff's Opposition insists that the "factual narrative" of discredited allegations and the denial letter's "inflammatory language" permits an inference of animus toward gay men fostering children (Opp'n at 13 (citing Compl. ¶¶ 29–31, 35, 46)). But these are precisely the sort of "conclusory factual allegations" that courts have found insufficient to survive Rule 12(b)(6) scrutiny. See Dolce v. Connetquot Cent. Sch. Dist., No. 24-CV-00622 (HG), 2025 WL 1070079, at *12–13 (E.D.N.Y. Apr. 9, 2025) (dismissing complaint "devoid of non-conclusory factual allegations that would allow the Court to infer that Defendants implemented the District Policies *because of* plaintiffs' sexual orientation or for other impermissible motivations such as malice or ill will."). Plaintiff's conclusory assertions of protected classes and claimed "pernicious stereotypes" does not lead to the inference that Costa's statutory grounds for denial (Compl. ¶ 35) were infected with unlawful motivations.

**D. The Complaint Fails to State a Valid Stigma-Plus Claim**

To the extent the Complaint originally hinted at a property interest in the pistol permit as the "plus" factor, Plaintiff has abandoned that argument. Defendants squarely challenged the lack of any property right in a discretionary permit, and the Opposition acknowledges this point in its opening sentence yet fails to address it substantively (Opp'n at 14). Instead, Plaintiff pivots entirely to a liberty-interest theory centered on "freedom from stigma impairing one's standing and freedom to seek employment" (Id. at 16 (citing Valmonte v. Bane, 18 F.3d 992, 999 (2d Cir. 1994); Brandt v. Board of Cooperative Educational Services, 820 F.2d 41 (2d Cir. 1987)). This silence on the property-interest challenge constitutes abandonment. See Harmon v. Bogart, 500 F. Supp. 3d 8, 19 (W.D.N.Y. 2020) (deeming claim abandoned where Opposition did not respond to arguments or raise a defense).

Even under a liberty-interest framework, the Complaint fails to allege the "stigma" prong: a false, derogatory statement capable of injuring reputation. Bohn, 2019 WL 5298152, at *6. The Opposition claims the denial letter's references to an investigation for "sexual assault and exploitation of


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

juveniles" and accusations by "multiple foster children" of "performing sexual acts on them" are "quintessentially stigmatizing" (Opp'n at 14–15 (citing Compl. ¶¶ 35, 37)). But these statements are indisputably true on the face of the Complaint; Plaintiff admits he *was* investigated based on such allegations, even if later deemed unfounded (Compl. ¶¶ 29–31), which form an insufficient basis for a plausible claim, see Paul v. Davis, 424 U.S. 693, 713 (1976) (no stigma-plus liability for publicizing true arrest record, even if charges later dropped), and, even if the statements could be unreasonably construed as defamatory (which they cannot), defamation does not implicate due process without the independent "plus." Paul, 424 U.S. at 706; Harmon, 500 F. Supp. 3d at 20.

As for that factor, the Opposition identifies two purported "plus" factors—the permit denial and employment suspension (Opp'n at 15)—but neither qualifies. First, plaintiff has abandoned the permit denial as a property interest, and its denial, alone, does not alter "legal status" in the stigma-plus sense, as it remains appealable and provisional. Conn. Gen. Stat. § 29-28(b); Regs. of Conn. State Agencies §§ 29-32b-1, 5. Second, plaintiff's being put on "paid administrative leave" (Compl. ¶ 54) does not constitute a tangible deprivation because plaintiff continued receiving his full salary. See Waronker v. Hempstead Union Free Sch. Dist., 788 F. App'x 783, 793 (2d Cir. 2019) (superintendent's placement on administrative leave did not satisfy the "plus" requirement because he did not assert that he was paid less than his full salary while on administrative leave).

Moreover, any supposed "reputational and economic harm" (Opp'n at 15) caused by this leave wrongly conflates the direct consequences of alleged stigma with a distinct state-imposed burden. In Sadallah v. City of Utica, 383 F.3d 34 (2d Cir. 2004), the court held that deprivation of "good will" following reputational damage was not a state-imposed alteration for stigma-plus liability, as such harm represented the "'deleterious effects'" flowing directly from the defamation itself. 834 F.3d at 38–39. So, too, here, any effects on plaintiff's "standing and freedom to seek employment" (Opp'n at 16) are


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

mere downstream injuries from the supposed stigma, not an independent legal deprivation. Harmon, 500 F. Supp. 3d at 20 (dismissing where plaintiff on paid administrative leave "has no deprivation of his legal rights or status").

**E. The Complaint Fails to State a Valid Substantive Due Process Claim**

To state a substantive due process claim, Plaintiff must allege (1) a valid liberty or property interest and (2) infringement of that interest in an "arbitrary or irrational manner" rising to conscience-shocking levels. 20 Dogwood LLC v. Vill. of Roslyn Harbor, 2024 WL 1597642, at *1 (2d Cir. Apr. 12, 2024) (citing Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of New York, 746 F.3d 538, 545 (2d Cir. 2014)); Okin v. Village of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 431 (2d Cir. 2009). Without reaching whether a protected interest exists, the Complaint fails on the second prong: no facts plausibly suggest "egregious" or "outrageous" conduct. Karam v. Utica City Sch. Dist., No. 6:23-CV-0020 (GTS/MJK), 2025 WL 641636, at *13 (N.D.N.Y. Feb. 27, 2025).

The identified instances of conscience-shocking behavior crumble under the most minimal scrutiny. Plaintiff emphasizes the "nature of the false accusation – child abuse" as "among the most stigmatizing and socially ruinous charges," (Opp'n at 17), yet he cites no authority for this proposition as *per se* conscience-shocking , but, more to the point, the Complaint attributes the genesis of the allegations to victims from various locations – not "MPD personnel." Ironically, Plaintiff alleges ***he*** made public through his own prior lawsuits these allegations and merely restating publicly available information cannot be "conscience-shocking," undermining any notion of "reckless" or "malicious.". See Lewis, 523 U.S. at 848 (requiring intent to harm or deliberate indifference beyond mere negligence).

Plaintiff also asserts the "harm inflicted was not trivial or remediable," including suspension from work, a "scarlet letter," and denial of his "Second Amendment right – all without basis" (Opp'n at 18). Plaintiff was placed on paid administrative leave, which does not shock the conscience or constitute



**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

"oppressive" action. Karam, 2025 WL 641636, at *13 (dismissing where paid leave followed misconduct allegations, as actions "do not...rise to the level required" and because "it is well-settled that an employee who is on leave and receiving his normal salary is not deprived of a property right merely by virtue of being relieved of his job duties."); Alaei v. State Univ. of New York at Albany, 21-CV-0377, 2024 WL 2941735, at *13 (N.D.N.Y. June 11, 2024) (quoting Knights v. City Univ. of New York, 639 F. Supp. 3d 395, 400 (E.D.N.Y. 2022). The permit denial was a proper exercise of statutory discretion. Conn. Gen. Stat. § 29-32b. Plaintiff's conjured reputational "branding" is mere speculation, not a distinct harm, and the Complaint pleads no affirmative cruelty or spite beyond routine processing.

Notably, at least portions of the substantive due process claim is duplicative of Plaintiff's procedural due process and First Amendment retaliation claims. Where alleged "shocking" conduct mirrors facts underlying more specific constitutional violations—like denial of process before permit deprivation or retaliatory disclosure—the generalized substantive due process avenue is unavailable. Karam, 2025 WL 641636, at *13 (dismissing as subsumed where same actions (paid leave, termination) and harms underpinned procedural due process claim); see also Novak v. Bd. of Educ. of Fayetteville-Manlius Cent. Sch. Dist., No. 05-CV-0199, 2007 WL 804679, at *8 (N.D.N.Y. Mar. 14, 2007) (substantive due process subsumed by procedural due process and First Amendment where same underlying facts alleged); Velez v. Levy, 401 F.3d 75, 94 (2d Cir. 2005) (noting that "[w]here what is allegedly shocking about what the defendants did is either their intent to violate plaintiff's fundamental First Amendment rights, or their motive to deprive her of liberty without procedural due process," such that proof of the unconscionable or shocking facts would show specific constitutional violations, redress under the substantive due process clause is unavailable). Here, the purported conscience-shocking acts—permit denial based on "known falsehood" and employer disclosure causing paid leave (Opp'n at 17–18)—are identical to those in the procedural due process (no hearing to contest allegations) and the



**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

First Amendment claim (retaliation for "complaining") (Compl., Count II ¶¶ 12–13; Opp'n at 19), as are the claimed harms (permit loss, reputational damage, leave) (Compl. ¶¶ 54–56). Plaintiff cannot repackage these as substantive due process "backstop" (Opp'n at 19). Velez, 401 F.3d at 94.

### F. The Complaint Fails to State a Valid First Amendment Retaliation Claim

The Opposition's causation theory rests on two sequences: (1) a September 4, 2024 FOIA request followed by the September 6, 2024 denial letter; and (2) a September 20, 2024 CHRO complaint followed by MPD's alleged contact with plaintiff's employer (Opp'n at 20). As such, Plaintiff necessarily admits that the employer contact was *not* due to the FOIA request, and the denial was *not* due to the CHRO complaint (id. at 20), severing any causal link.

Causation "may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity." Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 307 (2d Cir. 2021). The Complaint pleads neither. As to the FOIA request and denial, the closeness in time (September 4 submission to September 6 letter), rather than permit an inference of causation, indicates that the Chief would not have received the FOIA request prior to authoring the form denial letter (Compl. ¶ 33; Id., Count IV ¶ 4). The Opposition cites Complaint allegations suggesting such knowledge—only vague assertions of "timing and manner" (Opp'n at 20) – and, without allegations specifying awareness or animus, no causal inference arises. See Canady v. U of R/Strong Mem'l Med. Ctr., No. 21-2150, 2022 WL 17825332, at *2 (2d Cir. Dec. 21, 2022) (dismissing where complaint "alleged vaguely that the Defendants knew of his 'complaint'...yet he failed to specify which complaint, or how the Defendants knew about it").

The same deficiencies doom the CHRO complaint and employer disclosure link. The Complaint alleges the disclosure occurred "[u]pon or shortly after issuing the denial" on September 6, yet provides no connection to the September 20 CHRO filing, no facts showing Officer White or Chief Costa's


**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030

knowledge of it, and no specifics that *they* (rather than unnamed "MPD personnel") contacted the employer (Compl. ¶ 51; Id., Count IV ¶¶ 5–6). These omissions preclude any plausible inference of retaliatory intent. Canady, 2022 WL 17825332, at *2 (no causation without facts on knowledge or direct animus); Lively, 6 F.4th at 307 (same). The Opposition's reliance on Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996), and Gorman-Bakos v. Cornell Coop of Schenectady Cnty., 252 F.3d 545, 554-55 (2d Cir. 2001), is misplaced because, unlike the case at bar, those cases involved well-defined temporal proximities (among other evidence of pretext) rather than the conspicuously vague chronology sloppily presented here.

Adding to the Complaint's lack of a comprehensible timeline, Plaintiff's "lack [of] any legitimate cause" claim for the denial or disclosure to infer "punitive" motive (Opp'n at 21) plainly ignores the denial was expressly pursuant to Connecticut General Statutes § 29-28(b)'s "suitability" criterion, based on reported allegations uncovered in the required background check—a legitimate public safety function, not "completely unexplained or disproportionate" (Compl. ¶¶ 35–37; see Dorsett, 732 F.3d at 160 (requiring adverse action motivated by protected activity, not genuine/legitimate grounds)). That the disclosure was made by unspecified "MPD personnel," not White or Costa, specifically (Compl. ¶ 51), leaves no factual underpinnings to infer retaliatory intent.

DEFENDANTS, CITY OF MIDDLETOWN,
ERIK COSTA, and JARED WHITE

BY /ss/ Dennis M. Durao
Dennis M. Durao
Federal Bar No.: ct29271
Karsten & Tallberg, LLC
500 Enterprise Dr., Suite 4B
Rocky Hill, CT 06067
T: (860)233-5600
F: (860)233-5800
ddurao@kt-lawfirm.com

**CERTIFICATION**

I hereby certify that on November 17, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/ss/ Dennis M. Durao
Dennis M. Durao



**Karsten & Tallberg, LLC** • ATTORNEYS AT LAW
500 ENTERPRISE DRIVE, SUITE 4B • ROCKY HILL, CT 06067 • (860) 233-5600 • FAX: (860) 233-5800 • JURIS NO. 424030