**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

McWILLIAMS,
Plaintiff,

v.

COSTA, et al.,
Defendants.

No. 3:25-cv-01053 (SRU)

# ORDER ON MOTION TO DISMISS

## I. Introduction

Michael Paul McWilliams brought this suit against Erik Costa, Chief of the City of Middletown Police Department, Jared White, a Middletown police officer, and the City of Middletown (collectively, "the defendants"). Doc. No. 1 at 2-3. McWilliams alleges various federal and state constitutional claims and state tort law claims in connection with the Middletown Police Department's denial of his firearm permit application. *See generally* Doc. No. 1. The defendants moved to dismiss McWilliams's claims. Doc. No. 10.

## II. Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)). When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for

relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (quotation marks omitted).

## III. Background

Plaintiff McWilliams filed his complaint against defendants Erik Costa ("Chief Costa"), Chief of the Middletown Police Department ("MPD"), Jared White ("Officer White"), an MPD police officer, and the City of Middletown ("Middletown"). Doc. No. 1 at 2-3. The defendants moved to dismiss the case on September 29, 2025. Doc. No. 10.

I begin by summarizing the facts relating to (1) past allegations and investigations concerning McWilliams; (2) McWilliams's gun permit application; (3) MPD's alleged disclosure of those investigations and allegations to McWilliams's employer, a local school district.

### I. Past Allegations and Investigations Concerning McWilliams

At all relevant times, McWilliams was a "secondary school teacher, a single homosexual male, and an adoptive parent." Doc. No. 1 at 2. McWilliams "has no criminal record and has never been arrested or charged with any crime." Doc. No. 1 at 2. McWilliams previously owned firearms, including a handgun from 2022-2023 and a long gun from 2010-2015. Doc. No. 1 at 2.

From 2018 to 2024, allegations regarding McWilliams's behavior as a foster parent followed him as he moved to and resided in several different states. Doc. No. 1 at 3-4. Those allegations resulted in investigations by both federal, state, and local authorities. McWilliams maintains that none of the allegations was ever substantiated and that no investigating authority ever found evidence of McWilliams's wrongdoing. Doc. No. 1 at 3-4. I now summarize each of the allegations that McWilliams cites in his complaint.

First, McWilliams provided housing to Tyler Joseph, an 18-year old male, in Marshfield, Wisconsin, but later asked Joseph to leave the home due to behavioral issues. Doc. No. 1 at 4. Joseph's friend Hunter Mattheisen then accused McWilliams of engaging in sexual misconduct with Joseph and of distributing psilocybin mushrooms. Doc. No. 1 at 4. McWilliams claims that the Marshfield Chief of Police wrote a letter in November 2022 stating that the department "had not established any probable cause to arrest [McWilliams]." Doc. No. 1 at 4. McWilliams further maintains that Marshfield police investigated those claims and "concluded they were baseless." Doc. No. 1 at 4.

Second, McWilliams fostered two boys when he lived in Cortland County, New York in 2022. Doc. No. 1 at 5. In April of that year, one of the boys "absconded" from McWilliams's home after McWilliams confiscated the boy's phone. Police picked up the boy and the boy made claims that McWilliams choked him and gave him "whoopings." Doc. No. 1 at 5. When police took the boy to a hospital, McWilliams maintains that hospital staff found no evidence of abuse

and that the boy "admitted he was just upset about losing his phone" and said that McWilliams had not abused him. Doc. No. 1 at 5. Police returned the boy to McWilliams's home that same evening. McWilliams claims that Kelley Thomsen, a Cortland County CPS caseworker, began "pursuing the matter aggressively" after that allegation of abuse. Doc. No. 1 at 5. As a result of Thomsen's "defamatory assertions," the two boys were removed from McWilliams's home. Doc. No. 1 at 6. McWilliams maintains that "both boys disclosed no criminal conduct by [McWilliams]." Doc. No. 1 at 6.

Third, McWilliams adopted a son through West Virginia's child welfare system in 2021. Doc. No. 1 at 3. After the Cortland County abuse allegations, McWilliams alleges that Thomsen contacted the West Virginia State Adoption Program Director and characterized McWilliams as a "pedophile" and a "sexual predator." Doc. No. 1 at 5-6. Even after those assertions, McWilliams kept custody of his adopted son. Doc. No. 1 at 6. Thomsen continued to encourage investigations of McWilliams's treatment of his adopted son. Doc. No. 1 at 6-7. McWilliams maintains that "all investigations across the various jurisdictions (Wisconsin, New York State, and FBI) were closed with no action taken against [him]." Doc. No. 1 at 7.

## II. McWilliams's Gun Permit Application

In June 2024, McWilliams applied to the City of Middletown for a pistol and revolver permit. Doc. No. 1 at 7. The police chief is responsible for issuing that permit and he "must determine if the applicant is a 'suitable' person." Doc. No. 1 at 7. White, the MPD police officer, investigated McWilliams's background in connection with the gun permit application. Doc. No. 1 at 8. During that investigation, White learned of prior investigations and allegations involving McWilliams from state agencies in Wisconsin and New York. Doc. No. 1 at 8.

The defendants used those prior investigations and allegations to justify the denial of McWilliams's gun permit application. Doc. No. 1 at 8. Costa, the Middletown chief of police, issued a formal denial letter, stating "over the course of several years you have been investigated by multiple different agencies, to include Marshfield Wisconsin Police, SUNY Police, Cortland Police, the FBI, and NY Child Protective Services, for crimes related to sexual assault and exploitation of juveniles." Doc. No. 1 at 8. The letter also stated that McWilliams "had two foster children revoked from [his] home," placed "surveillance cameras in their bedrooms," and was "accused by multiple foster children…of choking or assaulting them." Doc. No. 1 at 9. Costa concluded the letter by stating "[a]t this time we feel that you are not a suitable candidate to obtain a pistol permit." Doc. No. 1 at 9.

III. MPD's Disclosure of Those Allegations and Investigations to McWilliams's Employer

After Costa issued that letter, McWilliams alleges that "MPD personnel affirmatively contacted [McWilliams's] employer, a local school district, and shared the content of Costa's defamatory letter and related 'background' information." Doc. No. 1 at 11. As a result of that disclosure, McWilliams's employer placed McWilliams on administrative leave. Doc. No. 1 at 12. The employer explicitly connected the leave decision with the MPD letter summarizing McWilliams's history of abuse allegations. Doc. No. 1 at 12. McWilliams asserts that "he was humiliated and effectively marked as a danger to children based on nothing but unproven accusations that had long been put to rest." Doc. No. 1 at 12.

## IV. Discussion

McWilliams brings the following claims against the following defendants: (1) a Fourteenth Amendment equal protection claim against Costa and White; (2) a Fourteenth

Amendment procedural due process claim against Costa and White; (3) a Fourteenth Amendment substantive due process claim against Costa and White; (4) a First Amendment retaliation claim against Costa and White; (5) a Second Amendment claim against Costa and White; (6) a defamation claim against all defendants; (7) a negligence and negligent infliction of emotional distress claim against all defendants; (8) a tort claim for intentional infliction of harm without excuse against all defendants; (9) a Connecticut General Statutes § 46a-64 claim for discrimination in public accommodations against all defendants; (10) a claim for invasion of privacy based on public disclosure of private facts and false light against all defendants; (11) a Conn. Gen. Stat. § 52-571k claim based on discriminatory denial of equal protection relating to the pistol permit letter against Costa and White; (12) a Conn. Gen. Stat. § 52-571k claim based on discriminatory denial of equal protection relating to disclosure to McWilliams's employer against Costa and White. *See generally* Doc. No. 1. McWilliams also alleges that the City of Middletown is liable for Counts 1, 3, 4, and 5. Doc. No. 1 at 15, 20, 22, and 24.

I proceed as follows. First, I determine whether McWilliams can bring a suit against the City of Middletown under *Monell*. Second, I examine the personal involvement of the defendants. Third, I analyze McWilliams's Fourteenth Amendment claims. Fourth, I evaluate McWilliams's First Amendment retaliation claim. Fifth, I examine McWilliams's Second Amendment claim. Finally, I analyze McWilliams's state law and tort claims.

I. The City of Middletown as a Defendant

"In *Monell*, the Supreme Court ruled for the first time that municipalities were liable under § 1983 to be sued as 'persons' within the meaning of that statute, when the alleged unlawful action was implemented or was executed pursuant to a governmental policy or custom." *Reynolds v. Giuliani,* 506 F.3d 183, 190 (2d Cir. 2007). "In order to prevail on a claim

against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury,* 542 F.3d 31, 36 (2d Cir. 2008). If a plaintiff cannot establish that the unlawful action was executed pursuant to governmental policy or custom, the plaintiff cannot sue the municipality because Section 1983 does not allow respondeat superior or vicarious liability on a municipality. *Reynolds,* 506 F.3d at 191.

"The existence of a municipal policy that gives rise to *Monell* liability can be established in four ways: (1) a formal policy endorsed by the municipality; (2) actions directed by the government's authorized decisionmakers or those who establish governmental policy; (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware; or (4) a constitutional violation resulting from [policymakers'] failure to train municipal employees." *Deferio v. City of Syracuse,* 770 F. App'x 587, 589-90 (2d Cir. 2019).

To rely on a final policymaker theory at the motion to dismiss stage, plaintiffs must plead sufficient factual allegations to support that theory. *See Anderson v. City of Mount Vernon,* 2025 LX 432203, at *16-17 (S.D.N.Y. Sept. 29, 2025) ("Plaintiffs again allege that the Commissioner of Public Safety and the MVPD Chief of Police are final policymakers, but provide no legal authority—such as New York law, city charter provisions, or municipal regulations—to support this conclusion."); *see also Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991) (explaining that "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy").

McWilliams appears to argue that the violations of his constitutional rights occurred pursuant to actions directed by Middletown's authorized decisionmakers or policymakers. Doc.

No. 1 at 15, 20, 22, and 24. Relying on that final policymaker theory of *Monell* liability, McWilliams pleads no factual allegations to support that conclusion. His *Monell* arguments are bare and conclusory. I provide several examples from McWilliams's complaint. First, in pleading his Fourteenth Amendment equal protection claim, McWilliams alleges that "Middletown is also liable because the denial was the act of the Chief of Police – a final policymaker for the City in the context of firearm permitting – and thus represents an official policy or decision of the municipality." Doc. No. 1 at 15. Second, in pleading his Fourteenth Amendment substantive due process claim, McWilliams asserts that "Middletown is also liable to the extent that Chief Costa's decision represents official municipal policy in this area." Doc. No. 1 at 20. Third, in pleading his Second Amendment claim, McWilliams argues that Middletown "is also responsible, as the denial was an official act by the Chief of Police. To the extent Connecticut law afforded the Chief discretion, that discretion was exercised in a way that violated the Constitution, making the City liable under *Monell*." Doc. No. 1 at 24.

His *Monell* allegations suffer from the same defects noted in *Anderson and Ricciuti*: he provides no factual basis for his assertion that Chief Costa is a final policymaker and only alleges one incident to establish a municipal policy: the denial of his gun permit application.[1] Consequently, he has not adequately pled that "the alleged unlawful action was implemented or was executed pursuant to a governmental policy or custom." *Reynolds,* 506 F.3d at 190.

Moreover, even if McWilliams could cure that defect, it appears that Middletown has no role in the firearm permitting process. Conn. Gen. Stat. §29-28(a) and (c) delegate firearm

[1] For his *Monell* claim, McWilliams also suggests that Costa and White alerted McWilliams's employer that he had been the subject of investigation for "sexual assault of minors." Doc No. 1 at 12, 21. However, previously in his complaint, McWilliams only asserts that "someone at the [Middletown Police Department]" alerted his employer that McWilliams had been investigated for "sexual assault of minors." Doc. No. 1 at 12. Therefore, McWilliams never definitively asserts that Costa himself alerted McWilliams's employer and cannot impute that incident to Costa as a final policymaker.

permitting authority directly to chiefs of police. Under the permitting scheme established by that statute, the municipality has no role. The chief of police therefore cannot be said to be acting on behalf of the municipality or enforcing a municipal policy or custom, as required for a valid *Monell* claim. *See Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020) ("The elements of a *Monell* claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right.").

I therefore **dismiss** all claims against Middletown.

II. Personal Involvement for Section 1983 Claims

To bring a claim under Section 1983, a plaintiff "must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann,* 983 F.3d 609, 618 (2d Cir. 2020).

a. Officer White as a Defendant

I now examine whether McWilliams pleads any allegations concerning Officer White's personal involvement in the claimed constitutional violations.

McWilliams alleges that Officer White "contacted out-of-state agencies and reviewed records related to those past investigations." Doc. No. 1 at 8. McWilliams claims that "White made and published statements concerning [McWilliams] in the course of that [background] investigation." Doc. No. 1 at 3. McWilliams again refers baldly to "Officer White's statements" in the complaint, but never identifies the statements to which he refers. Doc. No. 1 at 15.

McWilliams also contradicts himself regarding whether it was White who informed his employer of past allegations and investigations concerning McWilliams. As discussed above, McWilliams variously alleges that "MPD personnel affirmatively contacted [his] employer, a local school district, and shared the content of Costa's defamatory letter and related

'background' information," doc. no. 1 at 11, and that "someone at MPD told [McWilliams's] school officials that [he] had been the subject of multiple investigations for sexual assault of minors and was considered 'unsuitable.'" Doc. No. 1 at 12. The complaint later offers stronger allegations regarding White's personal involvement: "White also told [McWilliams's] employer (or provided the information that was told) that [McWilliams] was under investigation for sexual misconduct," doc. no. 1 at 26, and "defendants compounded their retaliation by actively reaching out to [McWilliams's] employer to damage his employment." Doc. No. 1 at 21. I do not have to credit contradictory allegations. *See Silano v. Scarnuly-Grasso,* 2017 U.S. Dist. LEXIS 101197, at *39 (D. Conn. June 28, 2017) (explaining that contradictory allegations "show the lack of plausible allegations").

McWilliams therefore fails to plead any allegations against Officer White that are material to his claims. McWilliams therefore does not satisfy *Tangreti* because he did not adequately plead that Officer White's conduct violated the Constitution. I **dismiss** Officer White as a defendant without prejudice.

b. Personal Involvement in Employer Disclosure

Given that Chief Costa is now the only remaining individual defendant, I determine whether McWilliams plausibly alleges that Chief Costa was involved in the disclosure of McWilliams's history of sexual misconduct allegations and investigations to his employer. Regarding Chief Costa's involvement, McWilliams's strongest allegation is that the "defendants compounded their retaliation by actively reaching out to [McWilliams's] employer to damage his employment." Doc. No. 1 at 21. Again, given the contradictory allegations regarding who disclosed McWilliams's history to his employer, that allegation is insufficient to plead Chief Costa's involvement in the employer disclosure.

Therefore, because I dismissed Officer White as a defendant and because McWilliams has not adequately pled Chief Costa's personal involvement in the employer disclosure, McWilliams cannot use the employer disclosure as the basis for a Section 1983 claim.

III. Fourteenth Amendment Claims (Counts I, II, III)

McWilliams alleges Fourteenth Amendment equal protection, procedural due process, and substantive due process claims. Doc. No. 1 at 14-20. Because I previously ruled that he cannot use the employer disclosure as a basis for a Section 1983 claim, I analyze his Fourteenth Amendment claims based on the denial of his pistol permit application.

a. Equal Protection (Count I)

McWilliams alleges that Costa and White deprived him "of the equal protection of the laws, in violation of the Fourteenth Amendment, by intentionally subjecting him to differential treatment based on his sex and sexual orientation without any rational or lawful justification." Doc. No. 1 at 14. McWilliams further claims that "the decision to deny [his] pistol permit – and the manner in which defendants handled his case – was motivated by animus and stereotypes about homosexual men, particularly the pernicious stereotype conflating homosexuality with pedophilia." Doc. No. 1 at 14.

Because McWilliams styles his Fourteenth Amendment equal protection claim as a selective enforcement claim, he must plead that he "(1) [when] compared with others similarly situated, [he] was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure [him]." *Shabazz v. Brunelle,* 2025 LX 134839, at *21 (D. Conn. June 20, 2025) (cleaned up).

McWilliams's selective enforcement claim fails because his complaint does not allege any comparators. He only pleads that "individuals actually arrested or convicted of crimes have been granted permits." Doc. No. 1 at 14. Without more detail, that reference is insufficient. *See Parrino v. Dep't of Educ.,* 2026 LX 58923, at *24 (E.D.N.Y. Feb. 13, 2026) (dismissing plaintiff's selective enforcement claim because "[h]er references to employees covered by Executive Order 62, and to 'other tenured employees similarly situated,'…are insufficient."). From his allegation, I cannot "plausibly infer a reasonably close resemblance between" McWilliams and other gun permit applicants. *Hu v. City of N.Y.*, 927 F.3d 81, 97 (2d Cir. 2019).

I therefore **grant** the defendants' motion to dismiss McWilliams's Fourteenth Amendment equal protection claim and dismiss without prejudice.

b. Procedural Due Process (Count II)

McWilliams also brings a procedural due process claim against Costa and White, claiming that they "made and published defamatory statements about [him] in the course of denying him the pistol permit." Doc. No. 1 at 16. McWilliams asserts that their conduct implicates the stigma-plus doctrine, under which "a state actor cannot, without due process, inflict stigma on an individual (through false charges that seriously damage reputation) while also altering that individual's legal status or rights in a tangible way." Doc. No. 1 at 16.

"To prevail on a 'stigma plus' claim, a plaintiff must show (1) the utterance of a statement 'sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah v. City of Utica,* 383 F.3d 34, 38 (2d Cir. 2004) (internal citations omitted).

McWilliams has not plausibly pled a stigma plus claim against Chief Costa. McWilliams alleges that Chief Costa wrote a letter claiming that McWilliams was "accused by multiple foster children that resided in [his] house of choking or assaulting them and of performing sexual acts on them in addition to other potentially inappropriate conduct." Doc. No. 1 at 9. McWilliams maintains that Chief Costa's claims are false and omit that McWilliams was "cleared of all such allegations." Doc. No. 1 at 9. According to McWilliams' own allegations, though, there were three investigations taken against him by authorities in Wisconsin and New York and by the FBI. Doc. No. 1 at 7. Critically, and again according to McWilliams's own allegations, Chief Costa's letter only references investigations and allegations and does not pronounce McWilliams guilty of any offense. Doc. No. 1 at 8-9. Therefore, McWilliams's stigma-plus claim fails because he is not capable of proving Chief Costa's statements to be false.

I therefore **grant** the defendants' motion to dismiss the stigma plus claim against Chief Costa and dismiss that claim with prejudice.

c. Substantive Due Process (Count III)

McWilliams also alleges that Costa and White violated his substantive due process rights by "arbitrarily label[ing] a fit parent a child abuser, without cause." Doc. No. 1 at 20. McWilliams asserts that Costa and White's conduct implicates several protected liberty interests: family integrity and life, intimate association (the parent-child relationship), and the right to follow a chosen profession free from unreasonable governmental stigma. Doc. No. 1 at 19-20.

"To state a substantive due process claim, a plaintiff must allege that: (1) the complained-of state action compromised a constitutionally-protected liberty or property right, and (2) the state action that deprived him of that interest was oppressive or arbitrary." *Morgan v. Cty. of Warren,* 2022 U.S. Dist. LEXIS 11728, at *12 (N.D.N.Y. Jan. 21, 2022) (internal quotation

marks and citations omitted). Stated differently, "[f]or a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Velez v. Levy,* 401 F.3d 75, 93 (2d Cir. 2005) (internal quotation marks and citations omitted). "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Cty. of Sacramento v. Lewis,* 523 U.S. 833, 849 (1998).

McWilliams does not allege any conduct egregious or outrageous enough to plead a substantive due process claim. Chief Costa's letter that discussed how McWilliams had been the "subject of multiple investigations for sexual assault of minors," doc. no. 1 at 12, does "not approach that threshold." *Chais v. City Univ. of N.Y. Cuny,* 2026 LX 310170, at *17 (E.D.N.Y. June 30, 2026). As stated previously, McWilliams himself admits that the investigations occurred. Doc. No. 1 at 4-7. He attempts to salvage his claim by arguing that Chief Costa "omit[ted] the exculpatory context: that Plaintiff was *cleared* of all such allegations, and that critical evidence (like the foster boys' own statements) contradicted the accusations." Doc. No. 1 at 9 (emphasis in original).

Chief Costa, however, has the discretion to deny a pistol permit application and to explain the basis for that denial. He is under no legal requirement to also include details and context that weigh against the denial of the permit application. Conn. Gen. Stat. § 29-28(c) provides that the "local [firearm] permitting authority shall" determine each permit applicant's suitability. Connecticut courts have held that "[t]he suitability requirement is the statutory mechanism which provides DPS and also the Board with the necessary discretion." *Kuck v.*

*Danaher,* 822 F. Supp. 2d 109, 129 (D. Conn. 2011). McWilliams therefore has not pled that the pistol permit application denial is egregious and outrageous conduct.[2]

I **grant** the defendants' motion to dismiss the substantive due process claim against Chief Costa and dismiss that claim without prejudice.

IV. First Amendment Retaliation (Count IV)

McWilliams also alleges that Costa and White violated his First Amendment rights by "retaliating against him for protected speech, petitioning, and for his protected associations." Doc. No. 1 at 22 (cleaned up).

For a private citizen to successfully plead a First Amendment retaliation claim against a government official, he must allege that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Vill. of Suffern,* 268 F.3d 65, 73 (2d Cir. 2001). "In order to make the requisite showing [on the chilling element], Plaintiffs must allege that the retaliatory conduct either silenced them, or had some 'actual, non-speculative chilling effect on [their] speech.'" *Schubert v. City of Rye,* 775 F. Supp. 2d 689, 711 (S.D.N.Y. 2011) (quoting *Williams v. Town of Greenburgh,* 535 F.3d 71, 78 (2d Cir. 2008)).

McWilliams fails to allege that the defendants' conduct silenced him or otherwise had a chilling effect on his speech. He pleads only that "[d]efendants' conduct would deter a person of ordinary firmness from exercising First Amendment rights" and speculates that the defendant' goal was "to deter [him] from further pursuing his appeals and to dissuade other marginalized

[2] As previously discussed, because McWilliams has not adequately pled Costa or White's personal involvement in the disclosures to his employer, McWilliams cannot use the employer disclosure as the basis for a Section 1983 claim.

individuals from speaking out." Doc. No. 1 at 22. McWilliams therefore does not sufficiently plead that the defendants' conduct silenced him or otherwise chilled his speech. Moreover, in describing his damages, he includes "the cost of having to continue to fight to clear his name." Doc. No. 1 at 22.

Because McWilliams has not adequately pled that the defendants' actions chilled his speech, I **grant** the defendants' motion to dismiss his First Amendment retaliation claim and dismiss that claim without prejudice.

V. Second Amendment (Count V)

McWilliams also alleges that Costa and White violated his Second Amendment rights "by denying him a permit to carry pistols without any valid cause, effectively barring him from exercising his right to bear arms." Doc. No. 1 at 23. He also attempts to hold the City of Middletown liable through *Monell*, but I dismissed all claims against Middletown without prejudice. *See supra* Section IV.I.

The Supreme Court has endorsed Connecticut's suitability regime. *N.Y. State Rifle & Pistol Ass'n v. Bruen,* 597 U.S. 1, 13 n.1 (2022) (explaining that "although Connecticut officials have discretion to deny a concealed-carry permit to anyone who is not a 'suitable person,' *see* Conn. Gen. Stat. §29-28(b), the 'suitable person' standard precludes permits only to those individuals whose conduct has shown them to be lacking the essential character of temperament necessary to be entrusted with a weapon.") (internal quotation marks and citations omitted).

Because the Supreme Court has endorsed the relevant regulatory regime, McWilliams is implicitly asking me to determine whether Chief Costa's denial of his firearm permit was arbitrary and capricious, in violation of McWilliams's Second Amendment rights. Doc. No. 1 at 23. "Under the arbitrary-and-capricious standard, judicial review of agency action is necessarily

narrow. A reviewing court may not itself weigh the evidence or substitute its judgment for that of the agency." *Magellan Tech., Inc. v. United States FDA,* 70 F.4th 622, 628 (2d Cir. 2023) (internal quotation marks and citations omitted).

Balancing my mandates to treat all McWilliams's allegations as true and to defer to the judgment of the Middletown Police Department, I hold that the defendant "acted within a zone of reasonableness and, in particular, [have] reasonably considered the relevant issues and reasonably explained the decision." *FCC v. Prometheus Radio Project,* 592 U.S. 414, 423 (2021) (describing the arbitrary and capricious standard). Through the course of their background investigation to determine McWilliams's suitability for a pistol permit, the defendants unearthed unsubstantiated past allegations of sexual and physical misconduct toward minors and investigations of that misconduct by federal, state, and local authorities. Doc. No. 10-1 at 1-2. The defendants weighed those allegations and investigations in evaluating McWilliams as a permit applicant and explained how that history affected their suitability determination.

Although McWilliams argues that the defendants should not have denied his permit application based on allegations that had been "investigated and dropped without charges," doc. no. 12 at 4, the Connecticut Supreme Court has held that the suitability determination can rely on factors outside of criminal conduct and convictions, including the applicant's character and "reputation in the community." *Stratford Police Dep't v. Bd. of Firearms Permit Exam'rs,* 343 Conn. 62, 82 (2022). By evaluating McWilliams's personal history and background, the defendants effectively examined his character and reputation in the community. It is not my place to conduct a post hoc analysis of their judgment. *See Magellan Tech.,* 70 F.4th at 628. I therefore hold that the defendants did not act in an arbitrary and capricious manner in denying McWilliams's permit application based on those past allegations and investigations.

I **grant** the defendants' motion to dismiss the Second Amendment claim against Chief Costa and dismiss that claim with prejudice.

VI. Tort and State Law Claims

McWilliams also brings various tort and state law claims: defamation, negligent infliction of emotional distress, intentional infliction of harm without excuse, state discrimination in public accommodations, invasion of privacy, and state equal protection claims.

I cannot reach the substance of McWilliams's state law claims without exercising supplemental jurisdiction. District courts exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). McWilliams's state law claims derive from the same "common nucleus of operative fact" as his federal claims. *Hamilton Rsrv. Bank Ltd. v. Democratic Socialist Republic of Sri Lanka,* 134 F.4th 73, 75 (2d Cir. 2025) (internal citations omitted).

However, I decline to exercise supplemental jurisdiction over McWilliams's state law claims because I dismissed his federal claims, the only claims over which I had original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). Therefore, I **grant** the defendants' motion to dismiss McWilliams's state law claims and dismiss those claims without prejudice.

As a separate note, it appears that, upon amendment, McWilliams could meet the requirements for diversity jurisdiction under 28 U.S.C. § 1332(a). McWilliams pleads that he is now a Pennsylvania resident and brought his claims against a Connecticut entity and individuals presumably residing in Connecticut. *See generally* Doc. No. 1. He also alleges that the defendants' actions caused "lost wages and benefits during his suspension" and that that he is seeking over $500,000 in damages. Doc. No. 1 at 39. However, McWilliams fails to plead the

citizenship of Chief Costa and Officer White and never affirmatively invokes diversity jurisdiction. *See Herrick Co. v. SCS Communs., Inc.,* 251 F.3d 315, 322-323 (2d Cir. 2001) ("[I]t is well established that the party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete.").

I suggest that McWilliams properly invoke diversity jurisdiction upon amendment. I further encourage him to narrow his state law claims to the strongest claims. As currently pled, his state law claims are wide-ranging and duplicative.

## V. Conclusion

For the foregoing reasons, I **grant** the defendants' motion to dismiss McWilliams's complaint. McWilliams can replead all claims I dismissed without prejudice. McWilliams has thirty (30) days from the date of this order to file an Amended Complaint.

So ordered.

Dated at Bridgeport, Connecticut, this 30th day of September 2026.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge